UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JUAN HERNANDEZ,

                              Petitioner,                            ORDER

     -against-                                                08-CV-1495 (SJF)

CAMERON LINDSAY, Warden MDC Brooklyn[1]

                              Respondent.
-------------------------------------------------------------X
FEUERSTEIN, United States District Judge

On April 2, 2008, petitioner Juan Hernandez ("petitioner"), who is currently incarcerated at the Metropolitan Detention Center ("MDC") in Brooklyn, filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 alleging: (1) that he was denied due process during a Bureau of Prisons ("BOP") disciplinary proceeding in July 2007 because there was no evidence to support the finding that he committed a violation of the BOP regulation with which he was charged; and (2) that the sanctions imposed were "unfair" and violated his Eighth and Fourteenth Amendment rights. Petitioner ostensibly seeks to expunge from his record: (1) the initial incident report charging him with a violation of a BOP regulation; (2) the findings of the Disciplinary Hearing Officer ("DHO"); and (3) the sanctions imposed pursuant to those findings. (Respondent's Memorandum in Opposition to Petitioner's Motion for Writ of Habeas Corpus ("Mem.").) For the reasons set forth herein, the petition is denied.

---

[1] Petitioner named Disciplinary Hearing Officer Garcia as respondent in the case. However, "[w]henever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file in the district of confinement." Rumsfeld v. Padilla, 542 U.S. 426, 446-47 (2004). Accordingly, Cameron Lindsay, the warden of the MDC, is substituted as respondent.

1

I.  Background

   A.  Factual Background

On July 4, 2007, while petitioner was incarcerated at the MDC, MDC staff conducted a routine and random search of his jail cell and completed an incident report indicating, in relevant part, as follows:

> "On July 4, 2007 at approximately 3:40 pm while conducting a random shakedown of cell J05-703 in [sic] which inmate's [sic] Hernandez, Juan #50461-054 and Perez, Edwin #694570-053 are assigned to, I found 145 Newport brand cigarettes concealed behind the toilet paper holder."

(Mem. Ex. B, § 11.) Later that night, petitioner was served with a copy of the incident report, (*Id.* at §§ 12, 15, 16.), charging him with a violation of BOP Code 331, entitled "Possession, Manufacture, or Introduction of a Non-hazardous Tool or Other Non-hazardous Contraband." (See 28 C.F.R. § 541.14, Table 3.)

On July 6, 2007, a hearing was held before the Unit Discipline Committee ("UDC"), during which petitioner declined to comment on the July 4, 2007 incident. (Mem. Ex. B, § 17.) The UDC referred the matter to the DHO for a further hearing "based on [the] severity of code 331" and recommended that the following sanctions be imposed: fifteen (15) days disciplinary segregation and ten (10) months loss of visiting and commissary privileges. (Id. at §§ 18–20.) On that same date, petitioner was advised of his DHO hearing rights and acknowledged those rights by signing a copy of the "Inmate's Rights" form. (See Mem. Ex. D)

Prior to the start of the DHO hearing on July 10, 2007, the DHO reviewed petitioner's rights and petitioner waived his right to staff representation and indicated that he would not call any witnesses or present any documentary evidence during the hearing. (Mem. Ex. C; Petitioner, Attach. A). During the DHO hearing, petitioner denied the charge against him and stated:

> "I was in my cell. I saw the officer speaking with Perez. The officer said I was good. They said they found cigarettes. I have only been in that cell for about 3 weeks. I wanted to move from that cell. I though [sic] someone had planted a knife. I did not know that was there."

(Id. at §§ III.A, III.B.)

In a report dated July 10, 2007 ("the DHO Report"), the DHO found, based on the "greater weight of the evidence," that petitioner committed the charged violation of BOP Code 331. (Id. at § V.) The applicable BOP regulation, 28 C.F.R. § 541.13, Table 3, provides, in relevant part, that a violation of Code 331 is a "moderate" offense and requires the DHO to impose at least one (1) sanction from a list of fourteen (14) potential sanctions, including up to fifteen (15) days of disciplinary segregation and loss of privileges. 28 C.F.R. § 541.13(a)(3), Table 3. In accordance with that regulation, and the recommendation of the UDC, the DHO sanctioned petitioner to fifteen (15) days of disciplinary segregation and ten (10) months loss of visitation and commissary privileges, finding, *inter alia*, that such sanctions were necessary "to punish [petitioner] for committing the prohibitive act of Code 331," "to deter [petitioner] from further negative behavior and to remind [petitioner] that [he is] expected to abide by the rules and regulations of [the] institution * * * ," and "have proven to be effective in the past in modifying unacceptable behavior to acceptable standards." (Pet. Attach. A.)

On July 17, 2007, petitioner received a copy of the DHO Report advising him, *inter alia*, of the DHO's findings; the evidence upon which the DHO relied in making those findings; the sanctions imposed; the reasons for such sanctions; and his right to appeal the DHO Report under the BOP's Administrative Remedy Procedure. (Pet., Attach. A.).

Petitioner's disciplinary segregation ended on July 24, 2007. On that same date, petitioner filed a BP-10 appeal (Regional Administrative Remedy Appeal) challenging the DHO

3

Report on the grounds that the area behind the toilet paper holder "is not a common area," insofar as the area is not accessible to any inmate and he did not have the tools to remove the toilet paper holder. (Pet. Attach. C, Part A.) By decision dated August 23, 2007, the Regional Director denied petitioner's appeal finding, *inter alia*: (1) that petitioner did not deny that one hundred forty-five (145) cigarettes had been found hidden behind the toilet paper holder in his cell; (2) that petitioner did not claim a lack of access to that area during the investigative stages and DHO hearing; (3) that inmates are responsible for keeping their areas free of contraband and for all items found in their cells; (4) that it was reasonable for the DHO to find that petitioner committed the prohibited act; (5) that the sanctions imposed "were consistent with the severity level of the prohibited act and not disproportionate to [petitioner's] misconduct"; and (6) that the DHO was authorized to impose sanctions that he determined would "significantly impact an inmate's future behavior." (Pet., Attach. C, part B.) Petitioner was advised of his right to appeal the Regional Director's decision to the General Counsel of the BOP. (Id.)

On September 10, 2007, petitioner filed a BP-11 appeal (Central Administrative Remedy Appeal) challenging the DHO Report on the grounds: (1) that he was innocent; (2) that he did not have access to the area behind the toiler paper holder; (3) that he could not have accessed the area because he did not have the correct tools; and (4) that he did not know that there was anything in that area. (Pet. Attach B., Part A.) That appeal was denied by the Administrator of National Inmate Appeals on October 31, 2007.

Petitioner's commissary and visitation privileges were restored on May 9, 2008.

B. Procedural History

On April 2, 2008, petitioner filed the instant petition for a writ of habeas corpus pursuant

4

to 28 U.S.C. § 2241, alleging: (1) that the DHO hearing violated his "[d]ue process right" because there was "no evidence to support" the DHO's findings, (Pet. at 2); and (2) that the sanctions imposed were "unfair" and violated his Eighth and Fourteenth Amendment rights. (Id.)

The petition fails to specify the exact relief sought. However, since petitioner sought to expunge the initial incident report, the DHO's findings and the sanctions imposed during the administrative proceedings,(see Pet. Attachs. A & B.), and the government construes the petition as seeking that relief, (Mem. at 2.), the petition will be liberally construed to seek the same relief in this proceeding.

II. Discussion

A. Standard of Review

Generally, a *pro se* pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See, e.g., Williams v. Kullman, 722 F.2d 1048, 1050-51 (2d Cir. 1983); United States ex rel. Buford v. Henderson, 524 F.2d 147, 152 (2d Cir. 1975).

B. Availability of Relief

Challenges to the execution of a federal sentence are appropriately brought under Section 2241. See Thompson v. Choinski, 525 F.3d 205, 209 (2d Cir. 2008); Adams v. U.S., 372 F.3d 132, 135 (2d Cir. 2004); see also Levine v. Apker, 455 F.3d 71, 78 (2d Cir. 2006) (matters challengeable under Section 2241 include "prison disciplinary actions, prison transfers, type of

detention and prison conditions"); Carmona v. United States Bureau of Prisons, 243 F.3d 629, 632 (2d Cir. 2001) (holding that a claim seeking to expunge BOP disciplinary sanctions from a petitioner's record is a challenge to the execution of the petitioner's sentence and is properly brought pursuant to Section 2241). Nonetheless, courts in this Circuit, and at least one circuit court, have held that claims based upon the loss of commissary and visitation privileges are not cognizable under Section 2241. See Homen v. Hasty, 229 F. Supp. 2d 290, 297 (S.D.N.Y. 2002); see also Hinebaugh v. Wiley, 137 F. Supp. 2d 69, 76 (N.D.N.Y. 2001) (holding that the loss of commissary and other non-custodial privileges has only a "tangential and speculative" impact on the imposition of future administrative sentences and, thus, is not "close to the core of habeas corpus" because expunging such sanctions from the prisoner's record does not definitely alter the terms and duration of his confinement); Reynolds v. Williamson, 197 Fed. Appx. 196, 198-99 (3d Cir. Sept. 19, 2006) (holding that challenges to the loss of commissary privileges were not cognizable under section 2241). I find the reasoning of those courts to be persuasive and likewise hold that petitioner's claims based on the loss of commissary and visitation privileges are not cognizable under section 2241. Accordingly, those claims are dismissed.

### C. Due Process Claims

#### 1. Sufficiency of Evidence Claim

The Supreme Court has held that prison officials may not infringe on a prisoner's protected liberty interests through disciplinary proceedings without "some evidence" to support their determinations. See Superintendent, Massachusetts Correctional Institution at Walpole v. Hill, 472 U.S. 445, 457, 105 S. Ct. 2768, 2774, 86 L. Ed. 2d 356 (1985). "[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board

* * * ." Id. at 455, 105 S. Ct. 2768. "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56, 105 S. Ct. 2768; see also Friedl v. City of New York, 210 F.3d 79, 85 (2d Cir. 2000); Franco v. Kelly, 854 F.2d 584, 588 (2d Cir. 1988). Thus, a claim that a prisoner was denied due process in a prison disciplinary proceeding because he was found guilty on the basis of insufficient evidence must be rejected if there is at least "some evidence" to support the DHO's decision. See Gaston v. Coughlin, 249 F.3d 156, 163 (2d Cir 2001).

The DHO's decision in this case is supported by some evidence, including, *inter alia*, the initial incident report, a photograph of the one hundred and forty-five (145) Newport cigarettes found behind the toilet paper dispenser in petitioner's cell and the petitioner's own statement denying knowledge of the contraband found behind the toilet paper dispenser in his cell, but not that the contraband had been found in his cell. Since the DHO's decision was supported by some evidence in the record, petitioner's due process claim based on the sufficiency of the evidence is denied.

2. Procedural Due Process Claim

Liberally construing the petition to assert a procedural due process claim, that claim is denied because petitioner was afforded all of the process due him.

Prisoners retain the protections of the Due Process Clauses of the Fifth and Fourteenth Amendments and, thus, may not be deprived of life, liberty, or property without due process of law. See Wolff v. McDonnell, 418 U.S. 539, 556, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974). Such protections are, however, "subject to restrictions imposed by the nature of the regime to which

[prisoners] have been lawfully committed." Id. In the context of prison disciplinary hearings, due process typically requires that a prisoner be provided:

> "advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken."

Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004) (citing Wolff, 418 U.S. at 563-67, 94 S. Ct. 2963).

The disciplinary proceeding procedures prescribed by BOP regulations in effect at the time of the disciplinary proceedings in this case, 28 C.F.R. §§ 541.10–.23 (effective July 8, 2007 through July 15, 2008), provided for all of the process due inmates in accordance with Wolff, and more. Moreover, those procedural guarantees were provided to petitioner insofar as, *inter alia*: (1) he was provided with the initial incident report in accordance with 28 C.F.R. §§ 541.14 and 541.15(a); (2) an initial hearing was held before the UDC within the time prescribed by 28 C.F.R. § 541.15(b), at which petitioner was present; (3) petitioner was afforded the opportunity to make a statement and present evidence during the UDC hearing in accordance with 28 C.F.R. § 541.15(d); (4) the UDC considered the evidence presented at the hearing, made a decision supported by some factual basis and referred the case for a DHO hearing pursuant to 28 C.F.R. § 541.15(f); (5) petitioner was provided with a written copy of the UDC's decision pursuant to 28 C.F.R. § 541.15(f) and was advised of his DHO hearing rights, including the rights to staff representation and to call witnesses, pursuant to 28 C.F.R. § 541.15(i); (6) the DHO hearing was conducted in accordance with the procedures set forth in 28 C.F.R. § 541.17, i.e., (a) petitioner received written notice of the charges against him at least twenty-four (24) hours prior to the DHO hearing, (b) petitioner was advised of his right to staff representation at the hearing, (c) petitioner was afforded the right to make a statement and to present witnesses and documentary

evidence on his own behalf, (d) petitioner was present throughout the hearing, (e) the DHO considered all the evidence presented at the hearing and rendered a decision based on the "greater weight of the evidence" and (f) petitioner was provided with a record of the proceedings, including a written copy of the DHO's decision and disposition; (7) the DHO imposed sanctions in accordance with 28 C.F.R. §§ 541.13 and 541.18(b); (8) petitioner was advised of his right to appeal the DHO's decision under the Administrative Remedy Procedures pursuant to 28 C.F.R. § 541.19; and (9) petitioner was placed in disciplinary segregation in accordance with 28 C.F.R. § 541.20(a), i.e., upon the DHO's finding, *inter alia*, that deterrence was necessary to regulate petitioner's behavior within acceptable limits. Since petitioner received all of the process due him under Wolff and the applicable regulations, any procedural due process claim asserted in the petition is denied.

3. Sanctions Claim

To the extent petitioner alleges that the sanctions imposed deprived him of a liberty interest protected by the Due Process Clause of the Fourteenth Amendment, that claim is without merit.

The Supreme Court has held that "federal courts ought to afford appropriate deference and flexibility to [prison] officials trying to manage a volatile environment * * *, especially * * * in the fine-tuning of the ordinary incidents of prison life * * * ." Sandin v. Conner, 515 U.S. 472, 483, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995) (citations omitted). Accordingly, a prisoner can only establish a due process claim in connection with prison disciplinary proceedings resulting in segregative confinement or loss of privileges by demonstrating that the sanctions "impose[d]

atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484; see also Sims v. Artuz, 230 F.3d 14, 22 (2d Cir. 2000).

The sanctions imposed upon petitioner were among those expressly authorized by BOP regulations, 28 U.S.C. § 541.13, were of a relatively short duration and were effectuated to pursue the legitimate goals of prison management and prisoner rehabilitation. See, e.g., Sandin at 485. Since the sanctions imposed upon petitioner were not atypical and, thus, did not violate a protected liberty interest, any Fourteenth Amendment due process rights claim with respect to those sanctions is denied.[2]

D.  Eighth Amendment Claim

The Eighth Amendment prohibits the infliction of cruel and unusual punishment, including punishments that involve the unnecessary and wanton infliction of pain. Trammel v. Keane, 338 F.3d 155, 161 (2d Cir. 2003) (citing Robinson v. California, 370 U.S. 660, 666-67, 82 S. Ct. 1417, 8 L. Ed. 2d 758 (1962)). In order to state an Eighth Amendment claim, a prisoner must allege conduct that is "repugnant to the conscience of mankind or incompatible with the evolving standards of decency that mark the progress of a maturing society." Estelle, 429 U.S. at 102, 105-06, 97 S. Ct. 285) (internal quotations omitted).

A prisoner can establish an Eighth Amendment violation by showing:

> "(1) that the deprivation alleged is 'objectively sufficiently serious' such that the plaintiff was denied 'the minimal civilized measure of life's necessities,' and (2) that the defendant official possessed a 'sufficiently culpable state of mind' associated with 'the unnecessary and wanton infliction of pain.'"

---

[2] In any event, for the reasons set forth in the preceding section, petitioner was afforded all of the process due him.

10

Trammell, 338 F.3d at 161 (citing Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)); see also Wright v. Goord, 554 F.3d 255, 268 (2d Cir. 2009) ("A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components– one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect.") The subjective component of an Eighth Amendment claim requires a showing that the defendant acted with the requisite culpability, see Wilson v. Seiter, 501 U.S. 294, 299, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991), i.e., with deliberate indifference to the prisoner's health or safety. Farmer, 511 U.S. at 834, 114 S. Ct. 1970. The objective component of an Eighth Amendment claim focuses on the harm done to the prisoner. See Wright, 554 F.3d at 268; Sims, 230 F.3d at 21. "To prevail on a claim based on conditions of confinement, a prisoner must show 'extreme deprivations,' * * * ," Sims, 230 F.3d at 21, i.e., that "the conditions of his confinement violate contemporary standards of decency." Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002).

The petition fails to state an Eighth Amendment claim. Disciplinary segregation for fifteen (15) days and loss of commissary and visitation privileges for ten (10) months are not objectively serious. See, e.g. Overton v. Bazzetta, 539 U.S. 126, 136-37, 123 S. Ct. 2162, 156 L. Ed. 2d 162 (2003) (holding that the withdrawal of visitation privileges for a limited period of time "is not a dramatic departure from accepted standards for conditions of confinement" and does not "create inhumane prison conditions, deprive inmates of basic necessities, or fail to protect their health or safety.") Moreover, the DHO Report indicates that the sanctions imposed were "reasonably calculated to restore prison discipline and security," Trammell, 338 F.3d at 164, and served a clear penological justification, i.e., the effective quelling of this type of behavior. Since petitioner has not established that the sanctions were imposed by the DHO in deliberate

indifference to his health or safety, or were objectively serious, his Eighth Amendment claim is denied.

III.   Conclusion

For the reasons set forth herein, the petition is denied. Since petitioner has failed to make a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253; see Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003). Petitioner has a right to seek a certificate of appealability from the Court of Appeals for the Second Circuit. 28 U.S.C. § 2253.

SO ORDERED.

SANDRA J. FEUERSTEIN  
United States District Judge

Dated: July 22, 2011  
Central Islip, New York